JOSIAH G. ALLEN v. THE WILMINGTON AND WELDON RAILROAD CO.*

*Exceptions must be made Below—Eminent Domain—Charter of W. & W. R. R. Co.—Joinder of Causes of Action—Remedy of One whose Land is Appropriated or Damaged by R. R. Co.—The Code, ch. 49, § 1932, et seq.; § 1945, § 1975.*

1. Only those exceptions which were made below will be considered in the Supreme Court.

2. The statutory method of condemning a right of way by the W. & W. R. R. Co. can be exercised only when the parties are unable to agree upon the terms of acquirement.

3. The right of eminent domain can be exercised only in the mode pointed out in the statute conferring it.

4. The method of proceeding, for the condemnation of land by railroad corporations, prescribed by ch. 49, The Code, is applicable to all railroads, whether formed under the general law or special act of incorporation.

5. Semble that § 1945, The Code, applies to the W. & W. R. R. Co.

6. The only remedy open to one, whose land is appropriated by the W. & W. R. R. Co. as a right of way, is under § 16 of the company's charter, as (possibly) modified by ch. 49, The Code. The statute has taken away the common law remedy.

*AVERY, J,, did not sit.

7. Where a deed for a right of way was obtained from a land-owner by fraud on the part of a railroad company, the Superior Court has jurisdiction to set aside the conveyance, but cannot go further, in the same action, and ascertain and enforce payment of damages suffered by the grantor by reason of the appropriation of his land *as a right of way* by the company, although such appropriation was made by the company under the deed in question.

8. There is a great difference between the joinder of incongruous causes of action. over *each* of which. the Court *has jurisdiction*, and the association of separate alleged causes of action of which *some are within* and *others withou' the jurisdiction* of the Court. In the latter case the allegations of causes of action of which the Court has no jurisdiction are but harmless surplusage. *Therefore*, where plaintiff sued a railroad company in the Superior Court for the value of his land appropriated as a right of way by the company, and joined a cause of action for damages sustained by him by reason of the *faulty construction* of the road: *Held*, that he could recover on the last mentioned cause of action, although the Court had no jurisdiction of the first.

This was a CIVIL ACTION, tried before *Avery, J.*, at Fall Term, 1888, of the Superior Court of JOHNSTON County.

The defendant company, to whom, under the name of "The Wilmington and Raleigh Railroad Company," its charter was granted in 1833 by the General Assembly, and whose corporate name was, by the act of February 14, 1855, changed into that it now has, upon the substitution of another terminus for the road, was authorized by section 21 "to construct a branch or branches to the main road, to be connected with the main road at such point or points as they (the stockholders) may determine on, and to lead in such direction and to such point or points as they may think best."

In the exercise of the authority conferred, the company proposed to construct a branch road from a point in the county of Wilson on its line to a point on the boundary line between the State and South Carolina, in either the county of Richmond or the county of Robeson, and with a view to

this end procured from the plaintiff free and perpetual right of entry to the plaintiff's land, an easement therein for the location and operating its contemplated railway, upon any part wherever the Company may select its route. The deed conveying the easement, with all the incidental rights and privileges necessary to its full enjoyment, was made and bears date August 29, 1882. Under this grant of the right of way, made, as on its face is expressed, "in consideration of the benefits to be derived from the building of the said branch road, and in further consideration of one dollar," the company proceeded, in the latter part of December, 1885, to construct its road upon a route selected and determined by its agents, and have, since its completion, been running its trains over the same.

On the 5th day of December, 1887, the plaintiff began the present action against the defendant, and in his complaint alleges that the deed for the right of way was procured from him by the false and fraudulent representations of the company's agent, that the road was to be built upon a line which had theretofore been surveyed and marked out, and ran through the rear part of the tract, from which but little inconvenience would have been caused to the use of the plantation, and an assurance that if the location was elsewhere a new conveyance would be required, for which, if not meant as a donation, compensation would be given ; and that the road had been built on a different route, over cultivated land, and to the great damage of the farm.

The plaintiff further demands, in other assigned causes of action, compensation and damages sustained by reason of the alleged unskillful and negligent construction of the road in the various particulars mentioned. The demand is : that the deed be declared void ; for fifteen hundred dollars damages, and for general relief.

The defendant, in answer to the complaint, denies all the imputations of falsehood and fraud in inducing the execu-

tion of the deed, averring that it was made f. eely and willingly, and after it had been read and explained; admits that a change had been adopted in the route of the road after the plaintiff's conveyance in general terms of the right of way across the land, as it was found most convenient and useful to the company; and, after controverting most of the allegations in the complaint, as a further defence, alleges that the plaintiff " demanded and received from it $100 for the license and privilege of constructing said road on the line as located."

Upon issues submitted to the jury, they find:

1. That the deed was procured through false and fraudulent representations, made by the company's agent, who thereby superinduced its execution.

2. That the road has been constructed over a different route from that marked out when the deed was given.

3. That the damage resulting from the change of route is $500, and from the failure to construct cattle-guards and crossings at plantation roads, $225.

4. That none has been occasioned by washings of the land caused by the negligent and unskillful manner of constructing the road.

Judgment having been rendered according to the verdict, defendant appealed.

Among the exceptions taken below, was the following:

" Counsel for defendant insisted that plaintiff's damage could not be assessed in this action, because this Court could only take jurisdiction of the action to set aside deed and not of the assessment of damages for right of way.

" His Honor held that the Superior Court, having exclusive jurisdiction of the question of fraud and misrepresentation, had a right to grant complete relief in this action; and this was not only the rule of the courts of equity, but was in accord with the idea upon which the new Code of Procedure was based, of deciding in one action all questions growing out of the same transaction."

*Mr. C. M. Busbee,* for the plaintiff.
*Mr. George Davis,* for the defendant.

SMITH, C. J. (after stating the case). The exceptions are very numerous, and we deem it necessary to notice only one, that is taken to the prosecution of the claim set out in article 5 of the first named causes of action contained in the complaint, and none is taken to the first, whose sole object is the setting aside the conveyance of the right of way over the premises, nor to the damages arising from the failure to put up cattle-guards and to construct crossings. The deed, if effectual, allowed the company to select its route, and would bar all claim for damages incidental to and necessarily incurred in exercising the conferred right   This obstacle in the way of any proceeding, under the statute, to acquire an easement in the land, must be removed by annulling the deed, for this method of obtaining the right is given when the *parties are unable to agree upon the terms of the acquirement.*

There is no difficulty, then, in prosecuting the action, so far as it proposes to put the conveyance out of the way, and seeks damages for subsequent injuries, unless it be in the plaintiff's own inaction to make objection, when he found a new line had been adopted by the defendant, and even accepted compensation for letting the water out of his pond to enable the company to go on with its work and expend largely in constructing the road. This point has been strongly urged in the argument, but as no exception of the kind is shown in the record, it cannot now be entertained, whatever may have been its force if taken in apt time.

The judgment, following the verdict, which affirms the allegations as to the influences brought to bear upon the plaintiff in inducing the making of the deed, will remain undisturbed.

The remaining causes of action are based upon trespasses committed upon the land, and the complaint demands com-

102—25

pensation in damages therefor, simply as such, and *not* for the value of any permanent right of way, to be acquired over the land, when such damages have been paid. It is obvious, if the judgment is permitted to stand, which gives compensation therefor, the defendant would have no easement or estate in the land, and would be equally exposed to another and successive actions for continuing trespasses, in the use of the road, by running its cars over the track.

The right of eminent domain, possessed by the State, may be exercised when conferred upon public corporations of the class to which the defendant belongs, as decided in *R. & G. R. R. Co.* v. *Davis*, 2 D. & B., 451, and many subsequent cases; but it must be exercised, and can only be exercised, in the mode pointed out in the statute. The provision in the act incorporating the defendant company, authorizing the proceeding to condemn lands of an owner over which the road is to pass, when the parties cannot agree on the terms of purchase, renders it "lawful for the president and directors to file a petition, in the name of the company, in the (now extinct) Court of Pleas and Quarter Sessions of the county wherein the land lies, under the same rules and regulations as are now prescribed for laying off public roads in said county," under certain restrictions mentioned. Sec. 14.

Authority is given the company, in sec. 17, to enter upon lands for the purpose of surveying a route for the track, and laying off and marking the same, and upon failure of the company to take steps for condemning the land, the same remedy is given the owner, and he is required to proceed, "after the manner and according to the rules provided in the 16th section hereof, and *not otherwise*." Sec. 18. The concluding clause of this section declares that "if the owners of said lands shall bring any action of trespass against the company or any of its officers, or any other action but a petition as aforesaid, the defendant may give this act in evi-

dence under the general issue or upon a special plea, and it shall bar the said action or suit."

The abolition of the county courts prevents a literal compliance with the terms prescribed in reference to the tribunal to which application must be made, but the objection disappears by the enactment contained in sections 9 to 22 inclusive of ch. 61, Revised Code, which supersede, at least in some particulars, the method of procedure, and determine the corporate rights and privileges of public corporations found in the charter.

By these provisions the railroad company may enter upon land and lay out the route on which to put the road, and either company or proprietor " may apply by petition" (five days previous notice having been given) "to the County or Superior Court of the county in which the land or some part thereof may be situate, and the Court shall appoint five disinterested and impartial freeholders to assess the damages to the owner for the occupation and use of the land aforesaid." And the method of proceeding for the condemnation of land, in furtherance of such public enterprises, is furnished in detail in ch. 49 of *The Code*, sec. 1932, *et seq.*, entitled "Railroad and Telegraph Companies."

In its original form, as found in Acts 1871–'72, sec. 13, the procedure for condemnation prescribed is confined to companies formed under the act, but in *The Code*, § 1943, that clause is reproduced by the addition of the words " or by special act of the General Assembly," so that it is now applicable to railroads whether formed under the general law or by special act of incorporation.

It is not material to inquire, to what extent the charter of the defendant, in these features, has been modified by subsequent legislation; though, as not impairing vested rights, we are inclined to the opinion that the modified provisions made on the subject must be pursued, and instead of a jury of view, the freeholders, as directed in section 1945, should

be appointed, whose duty it is *to go upon the premises and hear the proof,* and then make up and return their report to the Clerk, as representing the Superior Court, for its action thereon, as directed in the section next succeeding.

However this may be, the course pursued in the present case, in which the jury was allowed to ascertain the value of the rights and privileges demanded by the ·plaintiff, is wholly without warrant of law; and as no easement has been acquired, so no damages should have been awarded as the consideration therefor, nor could any damages be recovered for the act of entry upon the premises and the constructing and using the road.

The third instruction proceeds upon the idea of a vesting in the defendant of an interest in the land as a right of way over it, and directs the jury to ascertain, as the measure of value thereof, "the difference between what the whole property would have sold for, unaffected by the road, and what it would have sold for as injured (if it was injured) by the construction of the road," this being "the measure of damage for *the right of way,*" &c.

The charge is excepted to by the appellant in exceptions 5, 6, 7 and 8, and we think there is error therein.

The counsel for the appellee, in answer to the objection, argues that it should have been taken by demurrer, and has been waived. But this is not a case of the joinder of incongruous causes of action in the complaint, over each of which jurisdiction is possessed, but an association of separate alleged causes of action, of which some are within and others without the jurisdiction of the Court, so that redress may be given in the former, and cannot be given in the latter. The cause of action, growing out of the act of appropriating the plaintiff's real estate to the uses of the company, can be prosecuted only in a single special proceeding, provided in the statute, in its nature exclusive of any other, and which, as said by ASHE, J., in *Holloway* v. *Railroad,* 85 N. C., 452,

" has taken away the common law remedy." The allegations which introduce the claim for damages growing out of the construction of the road, and for which compensation must be sought in the statutory mode of procedure, are but harmless surplusage, and may be disregarded in the pursuit of such as are recoverable and are consequent upon a faulty construction of the road (*Singer Manufacturing Co.* v. *Barrett*, 95 N. C., 36); and for such, redress may be had in the present action. *The Code*, § 1975.

The complaint does not profess to transfer to the defendant any interest in the land, or easement upon it, upon the payment of the assessed damages, and hence no equivalent is secured to the company by making payment.

As while the deed continued in force, and it could be annulled only for the imputed vitiating infirmity, at the instance of those who made it, and by them it was acquiesced in until the bringing of the suit, the condition, the inability of the parties to come to an agreement, did not exist so as to warrant the summary action by petition, and therefore the case stands upon the conferred authority to enter upon the land and build the road. The compensation for this deprivation of property must await the result of the action of the commissioners and its confirmation, and meanwhile the common law remedy for other lawless invasions of the property of another is withheld, unless damages supervene afterwards, for which it does afford relief.

We pretermit an inquiry into the sufficiency of other exceptions taken at the trial, to rulings of the Court that have been the subject of earnest controversy upon the hearing, because not necessary in disposing of the case on appeal.

The counsel for appellant conceded the plaintiff's right to recover damages as assessed in the issues for defendant's neglect to put up cattle-guards and provide proper crossings at the intersection of the railroad with plaintiff's plantation

roads, and the judgment, so far as it awards these and sets aside the conveyance, must be affirmed, and reversed so far as it awards damages for the building of the road over the new instead of the original route by the mill.

Modified and affirmed.