COUNTY OF ROCKINGHAM v. NORFOLK & WESTERN RAILWAY COMPANY.

(Filed 24 April, 1929.)

**Highways A a—Where Highway Commission has closed grade crossing, county may not reopen it upon reincorporating abandoned highway.**

The State Highway Commission is given exclusive authority by statute to eliminate and close grade crossings of railroad tracks on the highway, and when it has so closed a grade crossing and substituted an underpass in the interest of public safety, 3 C. S., 3846(j), 3846(y), the commissioners of a county are without power to order the grade crossing abandoned by the Commission reopened to the public, and this power is not given the county by C. S., 3846 (e 5), authorizing the county commissioners to reincorporate into the county systems any portion of highway abandoned by the State Highway Commission. See, also, the declaratory statute ratified 18 March, 1929.

Civil action, before *MacRae, Special Judge,* at February Term, 1929, of Rockingham.

The plaintiff alleged that the State Highway Commission took over and incorporated into the State system of highways a public road between Stoneville, North Carolina, and the Virginia line, and thereafter

hardsurfaced the road to a point known as Price Station. When the Highway Commission first assumed control of the road there was a grade crossing just beyond Price Station. The trial judge found as a fact that in the latter part of 1926, or early part of 1927, the State Highway Commission "abandoned that part of the road just beyond Price Station and followed another county road for a distance of about 400 yards and eliminated said crossing . . . after the said Highway Commission had constructed a concrete overhead bridge over the railroad track and had built and extended the new hard-surface road along the west boundary of the church property, bringing the new hard-surface highway back into the old road as it formerly ran . . . closing the old road, and required the Norfolk & Western Railway Company to pay one-half of the expense of the said overhead bridge." Soon after completing the hard-surface road and the building of said overhead bridge, the defendant planted posts across the old public road on the south side of the crossing and on its right of way and tore up and destroyed the said crossing "after obtaining authority from the State Highway Commission to do so." Thereafter, on 11 September, the plaintiff brought this suit against the defendant to compel it to remove said obstruction and restore said grade crossing upon the ground that the portion of the old road abandoned by the State Highway Commission had been duly reincorporated into the county public road system of plaintiff in accordance with C. S., 3846 (e 5).

The trial judge issued a writ of mandamus to compel the defendant to restore said grade crossing, and the defendant appealed.

*Sharp & Sharp, W. R. McCargo and H. L. Fagge for plaintiff.*
*F. M. Rivinus, Burton Craige, Scott & Brewer and Murray Allen for defendant.*

BROGDEN, J. The determinative questions of law presented are:

1. Did the State Highway Commission have power to eliminate said grade crossing?

2. If so, was such power modified or destroyed by Public Laws of 1927, ch. 46, sec. 5, C. S., 3846 (e 5)?

C. S., 3846(k) expressly delegates to the State Highway Commission power "to regulate, abandon and close to use all grade crossings on any road designated as part of the State highway system . . . and whenever an underpass or overhead bridge is substituted for a grade crossing, the commission shall have power to close to use and abandon such grade crossing and any other crossing adjacent thereto." Power is also given the State Highway Commission to eliminate grade crossings by compelling the railroads to pay one-half the expense thereof.

C. S., 3846(y).  Exclusive jurisdiction over and control of grade crossings is expressly conferred upon the State Highway Commission by C. S., 3846(z).

The overhead bridge near Price Station was substituted for the grade crossing theretofore existing and was constructed by the defendant and the State Highway Commission in compliance with the provisions of the statute and for the express purpose of eliminating this particular grade crossing in the interest of public safety.  Under the law as written the State Highway Commission had exclusive control of the crossing, and therefore had exclusive power to "close to use such grade crossing."

Public Laws of 1927, ch. 46, sec. 5, C. S., 3846 (e 5), authorizes a county to reincorporate into the county system any portion of a road duly abandoned by the State Highway Commission.  This statute, however, neither by express terms nor by implication, undertakes to disturb or affect the exclusive jurisdiction of the State Highway Commission over grade crossings which it is authorized to eliminate.  Moreover, the grade crossing in controversy was duly "closed to use" before the abandonment of the small portion of the road leading to the crossing.  While the county has the right to reincorporate such abandoned portions of a road, it must necessarily follow that they must be reincorporated in the condition in which the Highway Commission left them.  The Highway Commission left or abandoned this road with the grade crossing "closed to use."  The county, therefore, has no power under the law to require the Highway Commission or the defendant to restore a grade crossing which has been duly abolished in compliance with the statute.  This view of the law received declaratory sanction by the General Assembly by an act ratified 18 March, 1929, which provides in substance that county road-governing authorities are not authorized to reopen any railroad grade crossing closed by order of the State Highway Commission "in connection with the building of an overhead bridge or underpass to take the place of such grade crossing."

Reversed.