L. C. WILKINSON ET AL. V. THE BOARD OF EDUCATION OF JOHNSTON COUNTY.

(Filed 5 November, 1930.)

1. **Schools and School Districts B a—It is legislative function to formulate the means of providing six months school term.**

It is a legislative function to formulate the means of carrying out the provisions of Article IX, section 3 of our Constitution that each county of the State be divided into school districts with one or more public schools therein to be maintained at least six months in every year.

2. **Schools and School Districts D b—Determination of number of teachers is judicial or quasi-judicial function of board of education.**

Where the board of education of a county receiving State aid for the maintenance of its schools from the State equalizing fund has submitted its budget for the expenses of the current year to the county commissioners, and the amount thereof is reduced by the county commissioners and the reduction accepted by the board of education, making the reduction of certain items of its budget necessary; *Held,* the items of the budget which shall be affected are to be determined by the board of education, 3 C. S., 5429, and where the board, in the exercise of its judicial or *quasi*-judicial powers has reduced the number of teachers to be employed, *mandamus* will not lie to compel it to employ the number of teachers contemplated in the original budget, which number had been set in accordance with sections 16, 17, chapter 245, Public Laws of 1929. 3 C. S., 5585, 5586, 5595, 5596, 5601, 5603, 5608.

3. **Mandamus A b—Mandamus will lie only to compel the performance of a legal duty and not a judicial or quasi-judicial function.**

Mandamus will not lie to control the exercise of discretion by a board, officer or court or of a judicial or *quasi*-judicial function, unless it clearly appears to the court that there has been an abuse of discretion, the function of the writ being to compel the performance of a ministerial or legal duty and not to establish a legal right.

APPEAL by plaintiffs from *Devin, J.,* at September Term, 1930, of JOHNSTON.

This is an application for a writ of mandamus. The plaintiffs are residents of Johnston County and committeemen of certain school districts therein. They allege that the committeemen of the complaining school districts made formal request of the board of education of Johnston County for the election of teachers conforming in number to the provisions of the sixteenth and seventeenth sections of chapter 245 of the Public Laws of 1929, and that the board, first promising compliance with their request, afterwards notified them that the number of teachers in their respective school districts would be reduced. The reduction was made by the board of education because the budget it had

proposed was reduced by the board of commissioners of Johnston County. The agreed statement of facts is as follows:

1. The budget for the school year for 1930-31, as prepared by the board of education and submitted to the board of county commissioners of Johnston County provided for the number of teachers for the various schools mentioned in the pleadings in this cause, on the basis set out in sections 16 and 17 of chapter 245, enacted by the General Assembly of 1929, known as the Hancock Bill.

2. The board of education in exercising its discretion allowed two teachers for Pleasant Grove District No. 1, as it did in other schools of the same class where the average attendance for the previous year was between 35 and 45.

3. Where the average attendance in the primary grades was 110, four teachers were allowed, and one additional teacher for each additional 35 average attendance.

4. The said budget as presented to the board of commissioners provided for sufficient funds to employ teachers on the above basis.

5. The budget was regularly submitted to the board of commissioners of Johnston County for the sum of $590,250.12 for all purposes, including the salaries for the aforesaid teachers for the operation of the schools of Johnston County, for the constitutional term of six months for the school year 1930-31.

6. Thereafter the board of commissioners returned the budget allowing $538,500, which budget was accepted by the defendant, the board of education, and thereafter, on the ........ day of August, 1930, the board of education reduced the number of teachers as set out in the pleadings in this action and in the other districts of the county in the same relative proportion, in order to stay within the budget as returned by the county commissioners.

7. Prior to the preparation of May budget the plaintiffs had made due request to be allowed the number of teachers for their various schools as originally allowed by the board of education, and more particularly set out in the pleadings.

Upon the foregoing facts it was adjudged that under the Public Laws of 1929, chapter 245, sections 16 and 17, the number of teachers to be employed was within the discretion of the board of education of Johnston County; that there was no abuse of discretion, and no failure to provide a term required by the Constitution, and that the application for a writ of mandamus be denied. The plaintiffs excepted and appealed.

*James D. Parker, Paul D. Grady, G. A. Martin, Hugh A. Page and Wellons & Wellons for plaintiffs.*
*Abell & Shepard for defendant.*

WILKINSON *v.* BOARD OF EDUCATION.

ADAMS, J. The relief sought is a writ of mandamus to compel the board of education of Johnston County to provide for certain schools in the county the maximum number of teachers provided for in sections 16 and 17 of chapter 245 of the Public Laws of 1929; and the only question is whether upon the agreed statement of facts the plaintiffs are entitled to the relief prayed. The controversy is thus reduced to a very narrow compass.

The Constitution provides that each county of the State shall be divided into a convenient number of districts in which one or more public schools shall be maintained at least six months in every year. Constitution, Art. IX, sec. 3. To formulate the means of meeting this requirement is a legislative function. Accordingly, it has been provided by statute that the county board of education of each county shall make an estimate of the amount necessary to continue the schools for a term of six months and that the board of county commissioners of each county shall determine and provide the amount necessary to maintain the schools for this period. From the State public school fund there is annually appropriated an amount sufficient to equalize as nearly as practicable the financial burden of supporting the schools for this term in the several counties. This "State Equalizing Fund" is apportioned by the State Board of Education to counties needing aid. Johnston is one of the counties receiving aid from this apportionment. In May the county board of education proposes a school budget for all the schools of a county for the ensuing year, setting forth the total estimated cost of maintaining all the schools of the county for a term of six months, and presents it to the board of county commissioners on or before the first Monday in June. The budget is intended to provide a current expense fund, a capital outlay fund, and a debt service fund. If the board of county commissioners approves the total amount of the budget, the board shall levy sufficient rates, after deducting the amount to be received from the State, to produce the amount asked for in the budget and to maintain the schools for six months. In the event of a disagreement between the county board of education and the board of county commissioners as to the amount of the current expense fund, the capital outlay fund, and the debt service fund they shall sit in joint session with a view to adjusting their differences, each board having one vote; and if there is a tie the clerk of the Superior Court shall act as arbitrator upon the issues joined between the two boards, each having the right of appeal from the clerk's decision. 3 C. S., 5585, 5586, 5595, 5596, 1927, ch. 239, sec. 1), 5601 (1927, ch. 239, sec. 7), 5603, 5608 (1927, ch. 239, sec. 12).

The board of education of Johnston County submitted to the board of commissioners a budget for the sum of $590,250.12 for all purposes;

and this budget would have provided sufficient funds to employ teachers upon the basis laid down in the act of 1929. The board of commissioners returned the budget, allowing $538,500, and it was accepted by the board of education. The proposed budget was thereby reduced in the sum of $51,750.12. Thereupon the board of education of Johnston County reduced the number of teachers as set out in the pleadings "in order to stay within the budget as returned by the county commissioners."

It is suggested by the defendant that the number of teachers to be "allowed" under sections 16 and 17, supra, (P. L., 1929, ch. 245) is within the discretion of the board of education; and it was so held by the trial judge. The plaintiffs say that the sections are mandatory and that the number of teachers is definitely fixed by the average daily attendance of pupils. The phraseology is sufficiently indefinite to permit, if not to require, resort to the rules generally applied in the construction of statutes, if the determination of this question were really essential to a disposition of the appeal. But in our opinion it is not essential. If the number of teachers is a matter within the discretion of the board of education the judgment refusing the writ must be affirmed. If it is not a matter of discretion, will not the same conclusion necessarily result from the agreed facts?

The record does not disclose the items composing the reduction in the budget; but by reason of the reduction all the purposes designed by the board of education cannot be achieved. A decrease in the proposed expenditures will necessarily result from a diminution of the proposed fund. By whom shall it be determined what fund or what subdivision of a fund the deficit shall primarily affect? Manifestly by the county board of education, upon whom are imposed all powers and duties respecting public schools which are not expressly conferred upon other officials. 3 C. S., 5429. It is not contemplated that the public school system shall be kept up without adequate funds or that the county board of education shall contract debts ad libitum for its maintenance. In Proctor v. Commissioners, 182 N. C., 56, it was held that the issuance of bonds by a school district should be permanently enjoined where the statute purporting to authorize the bonds provided for a sinking fund and the taxable property of the district was not sufficient to pay the interest and provide a sinking fund which would be adequate.

If the county board of education may determine what fund or what subdivision of a fund shall primarily be affected by the deficit can the courts by issuing a writ of mandamus control the exercise of the board's judgment?

We need cite no authority in support of the proposition that mandamus cannot be invoked to control the exercise of discretion of a board,

officer, or court when the act complained of is judicial or *quasi*-judicial, unless it clearly appears that there has been an abuse of discretion. The function of the writ is to compel the performance of a ministerial duty— not to establish a legal right, but to enforce one which has been established. The right sought to be enforced must be clear and complete; the writ will not be issued to enforce an alleged right which is in doubt. *Hayes v. Benton,* 193 N. C., 379; *Umstead v. Board of Elections,* 192 N. C., 139; *Johnston v. Board of Elections,* 172 N. C., 162; *Britt v. Board of Canvassers, ibid.,* 797.

Our conclusion is that the duties imposed upon the defendant in determining the effect of the deficit upon the maintenance of the schools are not entirely ministerial and that they involve at least *quasi*-judicial functions which are not subject to control by mandamus. Judgment

Affirmed.